UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
                                                               :
CONSULTING CONCEPTS INT'L, INC. and                            :
MASSIMILIANO PINCIONE,                                         :   **OPINION AND ORDER**
                                                               :   **GRANTING MOTION TO**
                                    Plaintiffs,                :   **DISMISS AND DENYING**
                                                               :   **MOTION FOR PRE-ANSWER**
             v.                                                :   **JURISDICTIONAL DISCOVERY**
                                                               :
KINGDOM OF SAUDI ARABIA and                                    :   19 Civ. 11787 (AKH)
CONSUMER PROTECTION ASSOCIATION,                               :
                                                               :
                                    Defendants.                :
                                                               :
-------------------------------------------------------------- X

ALVIN K. HELLERSTEIN, U.S.D.J.:

In December 2019, Plaintiffs brought parallel lawsuits in this Court and the English High Court of Justice, demanding compensation for certain consulting services provided to Defendants Kingdom of Saudi Arabia and Consumer Protection Association. *See* ECF No. 10. Defendants now move to dismiss the Complaint against them, pursuant to Rules 12(b)(1) and 12(b)(3) of the Federal Rules of Civil Procedure, for lack of subject matter jurisdiction under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 *et seq.* and under the doctrine of *forum non conveniens*. *See* ECF No. 50. In connection with Defendants' motion, Plaintiffs seek pre-answer jurisdictional discovery on sovereign immunity issues. *See* ECF No. 89. For the reasons discussed below, Defendants' motion to dismiss is granted, and Plaintiffs' motion for pre-answer discovery is denied.

## BACKGROUND

The instant case stemmed from a contract dispute between the parties for the payment of consulting services. *See* Am. Compl. (ECF No. 10), at ¶ 1. Plaintiff Consulting Concepts International, Inc. ("CCI") is a corporation organized and headquartered in the State of

New York. *See id.* at ¶ 6. Plaintiff Massimiliano Pincione ("Pincione"), a New York resident, is CCI's principal and shareholder. *See id.* at ¶ 7. In June 2013, Defendant Kingdom of Saudi Arabia ("Saudi Arabia"), through Defendant Consumer Protection Association ("CPA"), its agency or instrumentality, retained Plaintiffs to perform certain asthma- and non-asthma-related consulting services in Saudi Arabia. *See id.* at ¶¶ 11, 35. On June 4, 2013, CPA and CCI executed a contract (the "Contract") setting forth the parties' responsibilities. *See* Br. (ECF No. 87), Ex. C. The Contract provides, among other things, that CCI and CPA "will collaborate to develop and implement strategies, programs and public policies to address the root causes of Asthma, its prevalent misdiagnosis, treatment compliance and pediatric continuing-education in the Kingdom of Saudi Arabia, as well as to promote proven therapeutic protocols to enhance and improve the life of Saudi Arabia's youth." *Id.* at 1. The Contract also provides that "[t]he parties [ ] will submit themselves to the jurisdiction of the laws of the United Kingdom for any and all disputes arising from this agreement." *Id.* at 1. Plaintiffs assert that they completed asthma- and non-asthma-related consulting services as of January 2014, and that Defendants have not made any payments to Plaintiffs on account of their services. *See* Am. Compl., at ¶¶ 16, 40.

On December 24, 2019, Plaintiffs brought the instant action to recover compensation and damages from Defendants in the amount of $45,055,500.00 for asthma-related services and $12,000,000.00 for non-asthma-related services. *See id*. at ¶ 1. The Amended Complaint alleges breach of contract, account stated, quantum meruit, and unjust enrichment. *See id.* Three days later, on December 27, 2019, Plaintiff CCI filed a claim against Defendant CPA in the High Court of Justice in England, also seeking compensation and damages related to their asthma- and non-asthma-related consulting work. *See* Br., Ex. F. On September 29, 2020,

Defendants moved in this Court to dismiss for lack of subject matter jurisdiction under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 *et seq.* and under the doctrine of *forum non conveniens*. *See* ECF No. 50. In support of their positions, Plaintiffs and Defendants submitted declarations of their respective experts, James M. Turner, Q.C. and Gavin Kealey, Q.C., on issues of English law. *See* ECF Nos. 52, 79, 102. Plaintiffs also filed on January 13, 2021, a motion for pre-answer jurisdictional discovery on sovereign immunity issues. *See* ECF No. 89. As discussed in the following section, Defendants' motion to dismiss is granted, and Plaintiffs' motion for pre-answer discovery is denied.

## DISCUSSION

There are three issues of contention before the Court: (i) whether the Court lacks subject matter jurisdiction over Defendants under the Foreign Sovereign Immunities Act, (ii) whether the Contract contains an enforceable forum-selection clause that requires dismissal of the case for *forum non conveniens*, and (iii) whether Plaintiffs are entitled to pre-answer jurisdictional discovery on sovereign immunities issues. The Court discusses these three issues in turn.

**I.        Foreign Sovereign Immunities Act.**

Defendants contend that the Court lacks subject matter jurisdiction over Defendant Saudi Arabia under the Foreign Sovereign Immunities Act. *See* Br., at 36. It is "axiomatic that '[f]ederal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute.'" *Acorne Products, LLC v. Tjeknavorian*, 33 F. Supp. 3d 175, 180 (E.D.N.Y. 2014) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). The Court, therefore, must independently examine issues of subject matter jurisdiction before reaching other potential grounds for dismissal. *See Rhulen Agency, Inc. v.*

3

*Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990) (finding that subject matter jurisdiction is a threshold issue that a court must consider before addressing the merits of any particular case); *Zhou v. Peng*, 286 F. Supp. 2d 255, 262 (S.D.N.Y. 2003) ("[I]ssues of the Court's subject matter jurisdiction may be raised at any time, including . . . *sua sponte* by the Court.").

The Foreign Sovereign Immunities Act ("FSIA") "is the sole source for subject matter jurisdiction over any action against a foreign state." *Kensington Int'l Ltd. v. Itoua*, 505 F.3d 147, 154 (2d Cir. 2007) (quoting *Cabiri v. Gov't of the Republic of Ghana*, 165 F.3d 193, 196 (2d Cir. 1999)). The FSIA provides that "a foreign state or an 'agency or instrumentality of a foreign state[ ]' is immune from federal court jurisdiction unless a specific exception to the FSIA applies." *Anglo-Iberia Underwriting Mgmt. Co. v. P.T. Jamsostek*, 600 F.3d 171, 175 (2d Cir. 2010) (quoting 28 U.S.C. § 1603(b)). "When [a] defendant claims immunity under the FSIA," that defendant must first "present[ ] a prima facie case that it is a foreign sovereign." *Figueroa v. Ministry for Foreign Affs. of Sweden*, 222 F. Supp. 3d 304, 307 (S.D.N.Y. 2016) (quoting *Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1016 (2d Cir. 1993)). "Once the defendant presents a prima facie case that it is a foreign state [within the meaning of the FSIA], 'the plaintiff [then] has the burden of going forward with evidence showing that, under exceptions to the FSIA, immunity should not be granted.'" *Kensington*, 505 F.3d at 153 (quoting *Cabiri*, 165 F.3d at 196).

Plaintiffs do not dispute that Defendants are "foreign states" within the meaning of the FSIA. (Plaintiff alleges that Defendant CPA is an agency or instrumentality of Saudi Arabia.) Am. Compl., at ¶¶ 8, 9. However, Plaintiffs argue that the "commercial activity" exception to sovereign immunity applies to confer jurisdiction. *See id*. at ¶ 3; Opp'n (ECF No. 86), at 39. Section 1605(a)(2) of the FSIA provides in relevant part:

4

> A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case . . . in which the action is based [i] upon a commercial activity carried on in the United States by the foreign state; or [ii] upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or [iii] upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2).

To pursue any of these three theories, a plaintiff must show "some form of (1) a 'commercial activity' carried on by or of the foreign state[,] (2) a nexus between the activity and the basis of the plaintiff's claims, and (3) a geographic connection with the United States." *Pablo Star Ltd. v. Welsh Gov't*, 378 F. Supp. 3d 300, 307 (S.D.N.Y. 2019), *aff'd*, 961 F.3d 555 (2d Cir. 2020), *cert. denied*, No. 20-640, 2021 WL 78181 (U.S. Jan. 11, 2021).

As provided by the FSIA, a "commercial activity" may be "either a regular course of commercial conduct or a particular commercial transaction or act." 28 U.S.C. § 1603(d). The text further instructs that "[t]he commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." *Id*. "[A] state engages in commercial activity . . . where it exercises only those powers that can also be exercised by private citizens as distinct from those powers peculiar to sovereigns." *Saudi Arabia v. Nelson*, 507 U.S. 349, 350 (1993). Whether the foreign state acts "with a profit motive or instead with the aim of fulfilling uniquely sovereign objectives" is irrelevant. *Figueroa*, 222 F. Supp. 3d at 310 (quoting *Anglo-Iberia*, 600 F.3d at 177). Instead, the key inquiry is "whether the particular actions that the foreign state performs (whatever the motive behind them) are the type of actions by which a private party engages in trade and traffic or commerce." *Id*. (internal quotation marks omitted).

5

The Supreme Court has explained that determining whether a plaintiff's claim is "based upon" a commercial activity requires courts to "look[ ] to the 'basis' or 'foundation' for a claim," or to "the 'gravamen of the complaint.'" *OBB Personenverkehr AG v. Sachs*, 136 S. Ct. 390, 395 (2015). Courts first must "identify[ ] the particular conduct on which the [plaintiff's] action is 'based.'" *Id*. (alterations in original) (quoting *Nelson*, 507 U.S. at 356). In doing so, courts should look at "the gravamen of the complaint" as well as "those elements . . . that, if proven, would entitle a plaintiff to relief." *Id*. (alteration in original) (internal quotation marks and citations omitted). "Courts then must consider the degree of closeness that exists between the commercial activity and the gravamen of the plaintiff's complaint." *Pablo Star*, 378 F. Supp. 3d at 308 (internal citations and quotation marks omitted). For a claim to be "based upon" a commercial activity, there must be "a *significant nexus* . . . between the commercial activity in this country upon which the exception is based and a plaintiff's cause of action." *Kensington*, 505 F.3d at 155 (quoting *Reiss v. Société Centrale Du Groupe Des Assurances Nationales*, 235 F.3d 738, 747 (2d Cir. 2000)) (omission and emphasis in original). This requisite "degree of closeness . . . is considerably greater than common law causation requirements." *Id*. at 156 (internal quotation marks omitted).

Plaintiffs' allegation, that their action "is based upon a commercial activity, carried on in the United States by a foreign state and/or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere," is conclusory and contradicted by the parties' agreement. Am. Compl., at ¶ 4; ECF 53-.[1] The Proposed Second

---

[1] Plaintiffs here do not assert subject matter jurisdiction under the third clause of the "commercial activity" exception. *See* Am. Compl., at ¶ 4; ECF No. 56, at ¶ 19. Nor could they, based on facts alleged in their Amended Complaint or the Proposed Second Amended Complaint. The third clause of the "commercial activity" exception is satisfied if the lawsuit is "(1) based . . . upon an act outside the territory of the United States; (2) that was taken in connection with a commercial activity of [the foreign state] outside this country; and (3) that caused a direct effect in the United States." *Morris v. People's Republic of China*, 478 F. Supp. 2d 561, 567 (S.D.N.Y. 2007) (internal citation omitted). An effect is "direct" under the third clause "if it follows as an immediate consequence of the

6

Amended Complaint, submitted after Defendants' motion to dismiss was filed, is equally deficient. *See* ECF No. 56. Even assuming Defendants' activity at issue is "commercial" in nature, the Court cannot find that Plaintiffs have shown a "significant nexus" between Defendants' commercial activity and Plaintiffs' claim. The relevant inquiry is not "whether the foreign state generally engages in commercial activity in the United States, but . . . whether the particular conduct giving rise to the claim is a part of commercial activity having substantial contact with the United States." *Shapiro v. Republic of Bolivia*, 930 F.2d 1013, 1018 (2d Cir. 1991). The gravamen of Plaintiffs' claim is that Defendants have failed to make payments on account of Plaintiffs' consulting services, and there is no question that the consulting services were directed at Saudi Arabia. *See* Am. Compl., at ¶¶ 16, 40. As the Second Circuit explained, the failure to respond to a payment demand, and even the failure to pay, are not "acts" under the FSIA. *Rogers v. Petroleo Brasileiro, S.A.*, 673 F.3d 131, 138 (2d Cir. 2012) ("[T]he failure to act is not itself an act in the United States." (internal alteration and citation omitted)). On the other hand, "[t]he *decision* by a foreign sovereign not to perform [a contractual obligation] is itself an act," but it is one occurring "in the foreign state." *Guirlando v. T.C. Ziraat Bankasi A.S.*, 602 F.3d 69, 76 (2d Cir. 2010) (emphasis added). Plaintiffs have not carried their burden of

---

defendant's" activity, meaning that, "between the foreign state's commercial activity and the effect, there was no intervening element." *Guirlando v. T.C. Ziraat Bankasi A.S.*, 602 F.3d 69, 74 (2d Cir. 2010) (internal quotation marks omitted). This requirement is "satisfied where the parties to a transaction, including the sovereign defendant, specifically agree or specifically contemplate that payment will be made to a United States bank account, and the plaintiff's cause of action arises out of that transaction." *Skanga Energy & Marine Ltd. v. Arevenca S.A.*, 875 F.Supp.2d 264, 271 (S.D.N.Y. 2012). To sustain jurisdiction under the third clause, the Second Circuit also applies a "legally significant acts test," which "requires that the conduct having a direct effect in the United States be legally significant conduct in order for the commercial activity exception to apply." *Virtual Countries, Inc. v. Republic of South Africa*, 300 F.3d 230, 240 (2d Cir. 2002) (internal quotation marks and citation omitted). Without any allegation of "direct effect" or "legally significant acts" in either the Amended Complaint or the Proposed Second Amended Complaint, the Court is left to "connect the dots" itself and cannot find that Plaintiffs have established subject matter jurisdiction over Defendants under the third clause of the "commercial activity" exception. *MMA Consultants 1, Inc. v. Republic of Peru*, 245 F. Supp. 3d 486, 510 (S.D.N.Y.), *aff'd*, 719 F. App'x 47 (2d Cir. 2017).

establishing a "degree of closeness" between Defendants' activity and the gravamen of Plaintiffs' claim, and the Court finds that it has no jurisdiction over Defendants under the FSIA.

II.        **Forum Non Conveniens.**

Apart from the issue of jurisdiction under the FSIA, the Amended Complaint should be dismissed under Rule 12(b)(3) of the Federal Rules of Civil Procedure because of *forum non conveniens*. The parties' contract provides that "[t]he parties [ ] will submit themselves to the jurisdiction of the laws of the United Kingdom for any and all disputes arising from this agreement." Br., Ex. C, at 1 (the "Term").[2] Plaintiffs argue that the Term is not a mandatory forum-selection clause but only a choice-of-law clause. *See* Opp'n, at 21. But the language "will submit themselves to the jurisdiction" plainly is mandatory. The Supreme Court made clear that the "appropriate way to enforce a forum selection clause pointing to a state or foreign forum is through the doctrine of *forum non-conveniens*." *Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. of W. Dist. of Tex.*, 134 S. Ct. 568, 580 (2013). The doctrine of *forum non conveniens* allows a court to "dismiss an action on the ground that a court abroad is the more appropriate and convenient forum for adjudicating the controversy." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007). "District courts enjoy broad discretion in applying this principle . . . ." *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005). "Where the parties have contractually selected a forum," there is a "presumption in favor" of that forum. *Fasano v. Yu Yu*, 921 F.3d 333, 335 (2d Cir. 2019) (citing *Martinez v. Bloomberg LP*, 740 F.3d 211, 218 (2d Cir. 2014)). Indeed, "a valid forum-selection clause

---

[2] As both parties acknowledge, the United Kingdom does not have a unitary legal system, and references to the "United Kingdom" by international parties to international commercial contracts are generally intended to refer to "England and Wales." *See* Turner Decl. (ECF No. 79), at ¶ 28; Kealy Reply Decl. (ECF No. 102), at ¶ 9.

[should be] given controlling weight in all but the most exceptional cases." *Atlantic Marine*, 134 S. Ct. at 581.

      **A.**    **The Contract Contains a Forum-Selection Clause.**

In the Second Circuit, courts interpreting a forum-selection clause resolve "questions of enforceability . . . under federal law, while interpretive questions—questions about the meaning and scope of a forum selection clause—are resolved under the substantive law designated in an otherwise valid contractual choice-of-law clause." *Martinez*, 740 F.3d at 223–24. The parties agree that English law governs the Contract.[3] *See* Opp'n, at 6; Reply (ECF No. 88), at 9. The plain meaning of the Term suggests that the parties selected England and Wales as their choice of forum. As discussed *infra*, that choice is also enforceable as a matter of federal law.

The Term is to be understood in the same way under English law. As Defendants' expert—Mr. Kealy—explains, there is no requirement under English law that "a specific form of words must be used to express a forum-selection agreement." *See* Kealey Decl. (ECF No. 52), at ¶ 38. The Term provides for the parties' submission to the "jurisdiction" of England and Wales for "any and all disputes," and under both English case law and common usage, "jurisdiction" denotes "forum." [4] *See Amoco (UK) Exploration Company v British*

---

[3] Plaintiffs in their Opposition Brief argue that the Court should apply federal law to interpret the Term. *See* Opp'n, at 18–19. This argument is meritless given the Second Circuit's clear mandate in *Martinez* to resolve interpretive questions under the substantive law selected by the parties.

[4] The Court agrees with Mr. Kealey's comment that the Term was not well drafted, especially in light of the parties' erroneous reference to the laws of the "United Kingdom" as opposed to the laws of "England and Wales." *See* Kealey Decl., at ¶ 32. Plaintiffs' expert, Mr. Turner, also recognizes this clear mistake. *See* Turner Decl., at ¶ 28(6) n.28 (recognizing that the parties made a mistake because they "must have meant 'English' when they said 'U.K.'"). This mistake also suggests the possibility that other "infelicity of expression may have affected the Term." Kealey Reply Decl., at ¶ 47 (citing *Wood v. Capita Insurance Services Ltd* [2017] UKSC 24; [2017] AC 1173 [12] (holding "the court must consider the quality of drafting of the clause")). A more sensible construction of the Term would read: "The parties above will submit themselves to the jurisdiction [and] the laws of [England] for any and all disputes arising from this agreement." Kealey Reply Decl., at ¶ 48.

*American Offshore Limited* [2001] EWHC 484 (Comm) (finding forum selection when the contract provides that it "is to be construed and take effect in accordance with the English Law and the parties hereto irrevocably submit to the exclusive jurisdiction of England and Wales"); *Jurisdiction*, Oxford English Dictionary (2d ed. 1989) (defining the word "jurisdiction" as "[a]dministration of justice; exercise of judicial authority, or of the functions of a judge or legal tribunal; power of declaring and administering law or justice; legal authority or power"). Plaintiffs argue in response that the Term is only a choice-of-law clause as a matter of plain meaning. *See* Opp'n, at 21. The Court disagrees. Plaintiffs' expert—Mr. Turner—acknowledges that "[j]urisdiction is a distinct concept from choice of law," but disregards the word "jurisdiction" in urging that the Term is but a choice-of-law clause. *See* Turner Decl., at ¶ 35. Under English law, "no part of a contract should be treated as inoperative or surplus," such that "the contractual language in dispute must be read as a whole in order to ascertain its objective meaning. It is necessary that the court 'has read the language in dispute and the relevant parts of the contract that provide its context.'" Kealey Reply Decl., at ¶¶ 17–18 (quoting *Wood* (n.4) [12]) (citing Kim Lewison, *Interpretation of Contracts* § 7.24 (7th ed. 2020)). As Mr. Kealey states, under English law, there is "no prescribed form of words required for a jurisdiction clause; and the cases demonstrate that the word 'courts' is not a prerequisite." Kealey Reply Decl., ¶ 26.

English law, like New York law, applies "business common sense" to ascertain the objective meaning of a contractual term. Kealey Reply Decl., at ¶ 37. The U.K. Supreme Court ruled that, "where there are rival meanings, the court can give weight to the implications of rival constructions by reaching a view as to which construction is more consistent with business common sense," and "[t]his unitary exercise involves an iterative process by which each

10

suggested interpretation is checked against the provisions of the contract and its commercial consequences are investigated." *Wood* (n.4) [11]–[12]. Here, the parties agree that they selected English *law* to govern "any and all disputes" arising from the Contract. Br., Ex. C, at 1; *see also* Opp'n, at 6; Reply, at 9. It would make business common sense for the parties to also select English *courts* as the forum to adjudicate claims under English law. *See Sinochem International Oil (London) Ltd v Mobil Sales & Supply Corp & Anor* (No.2) [2000] 1 Lloyd's Rep 670, 676 ("[T]here is not much point in choosing a specific law to accompany a jurisdiction clause unless the intention is to make the Courts where such law operates exclusive."). Plaintiffs offer no convincing arguments to the contrary. It defies business common sense to maintain parallel lawsuits in both New York and England when the resolution of the parties' disputes depends exclusively on the application of English law.[5] It also defies business common sense for the international parties to select the law of a *neutral* forum as the governing law but submit themselves to the *home* forum of one of the parties. As a matter of plain meaning and business common sense, the Court concludes that the Contract designates England and Wales as the parties' choice of forum.

      **B.**      **The Forum-Selection Clause Is Enforceable.**

Federal law also enforces the forum-selection clause. *See Martinez*, 740 F.3d at 223–24 (noting that "questions of enforceability . . . under federal law . . ."). Three factors are to be considered: whether (1) the clause was reasonably communicated to the party resisting its enforcement; (2) the clause is mandatory or permissive; and (3) the claims and parties to the dispute are subject to the clause." *Fasano*, 921 F.3d at 335 (citing *Magi XXI, Inc. v. Stato della*

---

[5] The Amended Complaint contains eight counts, all of which are common law claims. *See generally* Am. Compl. While the Court appreciates Messrs. Kealey's and Turner's assistance with the instant motion, instructing two Queen's Counsels to opine on points of English law at each stage of the litigation before this Court does not seem to be a common sense mode of dispute resolution that the commercial parties could have reasonably intended.

11

*Citta del Vaticano*, 714 F.3d 714, 721 (2d Cir. 2013)). "If the district court concludes that the presumption applies, it must then consider a fourth factor—whether the presumption of enforceability has been properly rebutted by 'a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *Id.* at 336 (quoting *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 384 (2d Cir. 2007)) (internal quotation marks omitted). Although federal law should be used to determine whether an otherwise mandatory and applicable forum clause is enforceable, "[i]n answering the interpretive questions posed by parts two and three of the four-part framework, however, [courts] normally apply the body of law selected in an otherwise valid choice-of-law clause." *Martinez*, 740 F.3d at 217–18. The parties here do not dispute that the first and third factors are met, namely, that the forum-selection clause was "reasonably communicated to the party resisting its enforcement," and that "the claims and parties to the dispute are subject to the clause." *Fasano*, 921 F.3d at 335.[6] The Court, therefore, limits its analysis to the second and fourth factors.

With respect to the second factor, the Term provides that the parties "will submit themselves to the jurisdiction . . . for any and all disputes . . . ." Br., Ex. C, at 1. This language indicates that the Term is "mandatory" rather than "permissive." *Fasano*, 921 F.3d at 335.; *see also DataCatalyst, LLC v. Infoverity, LLC*, No. 20-cv-310, 2020 U.S. Dist. LEXIS 46990, *5 (S.D.N.Y. Mar. 17, 2020) (applying the parties' choice of law to the "determination of whether the clause is permissive or mandatory"). Under the Brussels Regime, which remains binding on the United Kingdom after Brexit,[7] the parties' chosen jurisdiction "shall be exclusive unless the

---

[6] Plaintiffs do not contend in their Opposition Brief that the Term was not reasonably communicated or that the claims and parties involved in the instant action are not subject to the Term's "any and all disputes" language. Br., Ex. C, at 1; *see also First Cap. Asset Mgmt., Inc. v. Brickellbush, Inc.*, 218 F. Supp. 2d 369, 393 (S.D.N.Y. 2002) (ruling that arguments not addressed in an opposition brief are "waived").

[7] *See* Justice Committee, Third Special Report, 2016-17, HL 651, at 3 (UK).

parties have agreed otherwise." Council Regulation No. 1215/2012, art. 25, 2012 O.J. (L. 351) 1, 11 (EC) (the "Brussels I Recast"). English case law also supports this presumption in favor of exclusivity. *See Generali Italia S.p.A. & Ors v Pelagic Fisheries Corp. & Anor* [2020] EWHC 1228 (Comm) [92] (finding exclusive jurisdiction "because of the presumption of exclusivity arising under Article 25 of Brussels I Recast, and because the choice of English law in conjunction with the reference to English jurisdiction is a powerful factor in favour of construing the choice of English jurisdiction as exclusive") (internal quotation marks and citation omitted).

    As to the fourth factor, the Second Circuit noted that "exception to enforceability is interpreted narrowly." *S.K.I. Beer Corp. v. Baltika Brewery*, 612 F.3d 705, 711 (2d Cir. 2010). This fourth step, the *Bremen* test from *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972), asks whether the presumptively valid forum-selection clause is invalid because "(1) its incorporation was the result of fraud or overreaching; (2) the law to be applied in the selected forum is fundamentally unfair; (3) enforcement contravenes a strong public policy of the forum in which suit is brought; or (4) trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court." *Martinez*, 740 F.3d at 228. Here, the Amended Complaint does not present any factual allegations that these criteria are met. There is no suggestion that the Contract was the product of fraud or overreaching, or that the Contract contravenes a strong public policy of the forum state. Moreover, as both parties acknowledge, litigation between the parties has been pending in England since December 2019, and England is more than an adequate and available forum. Plaintiffs have therefore failed to present any factors that would warrant the non-enforcement of the forum-selection clause in this case.

Accordingly, the Amended Complaint is dismissed for lack of jurisdiction and because of *forum non conveniens*.

**III.        Jurisdictional Discovery.**

Plaintiffs separately move for pre-answer jurisdictional discovery on sovereign immunity issues.  *See* ECF No. 89.  Plaintiffs' motion is denied.  The Second Circuit has made clear that plaintiffs facing a sovereign immunity challenge have no automatic right to discovery. *See Arch Trading Corp. v. Republic of Ecuador*, 839 F.3d 193, 206 (2d Cir. 2016) ("[A] court must be circumspect in allowing discovery before the plaintiff has established that the court has jurisdiction over a foreign sovereign defendant under the FSIA.'"  (internal citation omitted)). Instead, plaintiffs must "establish a prima facie case that the district court ha[s] jurisdiction over [the defendant]" before discovery is granted.  *See Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 186 (2d Cir. 1998) ("Since the [plaintiffs] did not establish a prima facie case that the district court had jurisdiction over [the defendant], the district court did not err in denying discovery on that issue."); *see also Fagan v. Republic of Austria*, No. 08 Civ. 6715(LTS) (JCF), 2011 WL 1197677, at *20 (S.D.N.Y. Mar. 25, 2011) ("The plaintiffs' motion for jurisdictional discovery and an evidentiary hearing regarding subject matter and personal jurisdiction is denied because they failed to meet their burden of proffering evidence to demonstrate even prima facie the existence of such jurisdiction." (internal citations omitted)).  In *EM Ltd. v. Republic of Argentina*, 473 F.3d 463 (2d Cir. 2007), the Second Circuit noted that sovereign immunity provides "immunity not only from liability," but from the expense of discovery as well:

> a federal trial court has wide latitude over the management of discovery, *see Wills v. Amerada Hess Corp.*, 379 F.3d 32, 41 (2d Cir. 2004), but in the FSIA context, "discovery should be ordered circumspectly and only to verify allegations of specific facts crucial to an immunity determination." *First City, Texas-Houston, N.A. v. Rafidain Bank*, 150 F.3d 172, 176 (2d Cir. 1998) (quoting

14

> *Arriba Ltd. v. Petroleos Mexicanos*, 962 F.2d 528, 534 (5th Cir. 1992) (internal quotation marks omitted)); *cf. Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 849 (5th Cir. 2000) ("FSIA immunity is immunity not only from liability, but also from the costs, in time and expense, and other disruptions attendant to litigation.").

*EM*, 473 F.3d at 486. Here, Plaintiffs have not, to date, made out a prima facie case for the Court's exercise of jurisdiction over Defendants, because they have not offered facts demonstrating that the presumption of immunity can be overcome. *See First Fid. Bank, N.A. v. Gov't of Antigua & Barbuda-Permanent Mission*, 877 F.2d 189, 195 (2d Cir. 1989) ("The FSIA begins with a presumption of immunity which the plaintiff must overcome by showing that the defendant sovereign's activity falls under one of the statutory exceptions."). Specifically, Plaintiffs have failed to identify any "specific facts that it desires to controvert" or "disputed facts" that are "peculiarly within the knowledge of the sovereign." *Compania del Bajo Caroni (Caromin) v. Bolivarian Republic of Venezuela*, 556 F. Supp. 2d 272, 282 (S.D.N.Y. 2008) (internal quotation marks omitted); *see also EM*, 473 F.3d at 486 ("[D]iscovery should be ordered circumspectly and only to verify allegations of specific facts crucial to an immunity determination." (internal quotation marks and citation omitted)).

Accordingly, Plaintiffs' motion for jurisdictional discovery is denied.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted, and Plaintiffs' motion for pre-answer jurisdictional discovery is denied. The Clerk of Court shall terminate the open motions (ECF Nos. 50, 89) and close the case. The oral argument scheduled for April 6, 2021, is canceled.

SO ORDERED.

Dated: April 1, 2021  _____/s/_____
New York, New York  ALVIN K. HELLERSTEIN
United States District Judge